SUPREME COURT.   Clinton General Term, May, 1858.   *C. L. Allen*,
*James*, *Rosekrans* and *Potter*, Justices.

## THE PEOPLE *v.* BENJAMIN SHAVER.

Where a prisoner is let to bail by an officer out of court, the recognizance taken
must be filed, as required by statute, before any action can be taken upon it by
the court; and no suit can be maintained upon such a recognizance, without
averring in the complaint and proving on the trial that it had been filed, or
made a record of the court in which it was returnable.

It is a good defence to an action on a recognizance, that it was taken on an ille-
gal arrest of the prisoner, for whom the defendant became bail.

A complaint in writing charging S. with bigamy, alleged to have been committed
in Albany county, was made before a justice of the peace of Fulton county,
who issued his warrant for the arrest of S., under which S. was arrested in
Montgomery county, by a constable of the latter county (the warrant not
having been first indorsed by a justice of Montgomery county), and brought
into the county of Fulton before the justice who had issued the warrant, upon
whose requirement a recognizance was entered into to appear at the next
Court of Sessions to be held in Montgomery county:   *Held*, that the arrest
was illegal, and the recognizance void for duress; that it should have been
directed to an officer of the county in which the justice who issued it was a
magistrate; and that the justice who issued the warrant had no authority, in
a case like that before him, to take a recognizance for the appearance of the
prisoner at a Court of Sessions of any other county than that in which the
justice resided.

Form of a complaint on recognizance, and of an answer thereto, setting up the
above mentioned defence.

THIS was an action on a recognizance.   The complaint was
as follows:

SUPREME COURT, MONTGOMERY COUNTY.

The People of the State of New York
*agst.*
Benjamin Shaver.

The plaintiff alleges that the defendant, on the 30th day of
July, 1856, at Ephratah, in the county of Fulton, in the State

of New York, made, executed and delivered, the bond of which the following is a copy, together with one Nathan Shaver

*Fulton County, ss:*

Be it remembered that on the thirtieth day of July, 1856, one Nathan Shaver, in Albany county, and Benjamin Shaver, in Fulton county, of the same place, personally came before me, Aaron Nellis, a justice of the peace of said county, and severally and respectively acknowledged themselves to be indebted to the People of the State of New York, that is to say, the said Nathan Shaver, in the sum of two hundred dollars, and the said Benjamin Shaver, in the sum of five hundred dollars, each to be levied of their respective goods and chattels, lands and tenements, to the use of said People, if the said Nathan Shaver shall make default in the condition following:

Whereas, The said Nathan Shaver has been duly brought before me, the said justice, charged with the offence of bigamy, and having been duly examined before me touching said offence, and having been by me let to bail thereon:

Now the condition of this recognizance is such that if the said Nathan Shaver shall personally appear at the next Court of Sessions, to be held in and for the county of Montgomery, on the first Tuesday of September next, then and there to answer to an indictment to be preferred against him for bigamy, and to do and receive what shall by the court be then and there enjoined upon him, and shall not depart the court without leave, then this recognizance to be void, or else to remain in full force.

NATHAN SHAVER.        [L. S.]

BENJAMIN ⋈ SHAVER. [L. S.]
his
mark.

Taken, subscribed and acknowledged the day and year first above written before me.

AARON NELLIS.

The plaintiffs also allege, that upon complaint duly made and preferred before said Aaron Nellis, then and there an acting justice of the peace of the town of Ephratah, Fulton

county, against said Nathan Shaver, upon a charge of bigamy, viz.: for marrying a second wife in the city and county of Albany, in the month of October, 1855, while a former wife of said Nathan, then and there was still living and remaining his lawful wife as aforesaid, a warrant was, on or about the 30th day of July, 1856, aforesaid, issued against said Nathan, and that said Nathan had been at the town of Ephratah, in the county aforesaid, on the day aforesaid, but had then recently departed therefrom, and gone to the town of Palatine, in the county of Montgomery, where he was duly arrested thereon, and by virtue thereof taken by a constable of the county of Montgomery, to and before said justice, by and before whom the above recognizance was entered into by said Nathan and his surety aforesaid, defendant in this cause.

And the plaintiffs further allege, that all and every of the facts recited in said bond or recognizance are true, and that said justice had full power and authority to accept and take the same pursuant to the Revised Statutes in such case made and provided.

That said Nathan Shaver referred to in said bond or recognizance, and the defendant in this cause, did not comply with the terms and conditions thereof, but said Shaver wholly neglected to appear at the then next and last Court of General Sessions, held in and for the county of Montgomery, at the court house in Fonda, on the first Tuesday, which was the second day of September, 1856, and continued until the third day of September thereafter, according to the terms and conditions thereof, and in the manner required thereby. Although said Shaver was duly called for that purpose, on or about the 3d day of September last, and during the session of said court, and the said court then and there ordered said recognizance to be forfeited and prosecuted, but gave said Benjamin Shaver a stay of proceedings on said bond or recognizance until the then next ensuing term of Oyer and Terminer, to be held, and which was held, in and for the said county of Montgomery, on the 18th day of November last past, and which order was duly entered upon the records of said court, but the said Benjamin

wholly neglected to surrender the said Nathan, at and within the time specified in said order, though said court was duly held and passed, still does neglect to do so.

Therefore, the plaintiffs demand judgment against said defendant for five hundred dollars, with interest thereon, from said 3d day of September, 1855, beside costs.

P. G. WEBSTER, <em>District Attorney.</em>

The answer was as follows:

SUPREME COURT.

| |
|---|
| The People of the State of New York,<br>plaintiffs,<br>*agst.*<br>Benjamin Shaver, defendant. |

Benjamin Shaver, the above named defendant, answers the complaint of the above named plaintiffs, and denies each and every allegation set forth and contained in the plaintiffs' complaint.

2d defence. And for further answer to said complaint, the said defendant says, that sometime in the month of July, 1856, one Aaron Nellis, a justice of the peace of the county of Fulton, issued his warrant against one Nathan Shaver, who was then in the county of Montgomery, without any complaint made before him or other evidence, charging the said Nathan Shaver with having committed the crime of bigamy, or any other crime or offence whatever; but issued the same wrongfully and without authority of law. That the said Nathan Shaver was arrested under pretence of authority, in the county of Montgomery, by virtue of said pretended warrant, and wrongfully and without authority, taken before said justice in the town of Ephratah, in said county of Fulton, for examination before said justice, in the town of Ephratah. That said Nathan Shaver objected to the authority and jurisdiction of said justice, but that said justice refused to discharge said Nathan Shaver, but wrongfully, and without authority of law, required the said Nathan Shaver to give bail for his

appearance at the Court of Sessions to be held in the county of Montgomery, on the first Tuesday of September then next, and to execute a bond, with a sufficient surety, for his said appearance as aforesaid. And the defendant further says, that at the request of the said Nathan Shaver, and for the purpose of having him released and discharged from unlawful imprisonment, he, this deponent, signed said bond, a copy of which is set forth in the plaintiffs' complaint herein. And the said defendant alleges that all proceedings had before said justice were without authority or jurisdiction, and that said bond, given as aforesaid, is wholly void, and of no effect whatever.

MARTIN McMARTIN, *Attorney for Defendant.*


The action came on to be tried at a Circuit Court, held in and for Montgomery county, on the 13th day of May, 1857, before the Hon. E. H. Rosekrans, Justice of the Supreme Court, without a jury.

The plaintiff proved the execution of the recognizance described in the complaint, by Aaron Nellis, the justice who took the same, and also proved that said Nellis, at the time and place therein mentioned, was a justice of the peace in and for the county of Fulton. That on complaint of Levi Gray, which was in writing, showing that Nathan Shaver had married a second wife in the county of Albany, his first wife being still living, and not divorced from him, he issued a warrant in the usual form for the arrest of said Nathan Shaver. That said Nathan Shaver was arrested thereon in Montgomery county, by a constable of the county of Montgomery, and brought before said Nellis, justice of the peace of the county of Fulton, who took the recognizance. The warrant had not been indorsed in Montgomery county.

That the said Nathan Shaver did not appear at the General Sessions in Montgomery county, and that his default was taken thereat.

The defendant hereupon moved to nonsuit the plaintiff on the following grounds:

That the complaint did not aver that the recognizance was ever filed or was entered of record in the Court of Sessions of Montgomery county.

That the justice had no jurisdiction to issue his warrant on the proof before him, as the complaint did not show that a crime had been committed.

That the justice had no jurisdiction in the premises, the crime not having been committed in the county of Fulton, nor the offender being present in said county, and that the proceedings had before said justice were void.

The motion for a nonsuit was granted, and the plaintiffs' counsel excepted, and appealed to this court.

*Martin McMartin*, for the defendant.

I. A justice of the peace has no power to issue process of arrest unless the crime was committed in his county, or the offender is present in said county. (*The People* v. *Cassells*, 5 *Hill's Rep.*, 165.)

II. The warrant, if directed to a constable of Montgomery county, by a justice of the peace of Fulton county, was void, as the justice has no authority over the acts of constables out of his own county. And if the warrant was not directed to him, then he had no authority to make the arrest, as "none except those (or one of them), to whom a warrant is directed, have power to act under it." (1 *Chitty's Cr. Law*, 48.)

III. Again, the warrant was not indorsed by a justice of the peace of Montgomery county, and the arrest was therefore void. (2 *R. S.*, 3d ed., 793, § 5; *Barbour's Cr. Law*, 528.)

IV. The original arrest of Nathan Shaver, therefore, being void, the justice acquired no jurisdiction in the matter. "An arrest without warrant, when a warrant ought previously to have been issued, will not be rendered legal by a subsequent issuing of that authority." (*Barbour's Cr. Law*, 551; 1 *Chitty's Cr. Law*, 19; *Bac. Ab.*, *Trespass*, "*D*.")

The bill of exceptions is silent as to the place where Shaver was arrested, although the bill as prepared, and amendments as

The People *v.* Shaver.

proposed, show it to have been at St. Johnsville, Montgomery county, and as the bill shows that he was arrested by a constable of Montgomery county, I suppose that it will be intended that the arrest was made there. But should it be intended that the arrest was made in Fulton county, then the justice clearly had no power to recognize him to appear at a court holden in Montgomey county. (3d ed. Revised Statutes, vol. 2, 796, § 28; also 795, § 22; also 773, § 10.)

The proceedings before the justice being without authority, the recognizance is utterly void, both at common law and by statute. (2 Revised Statutes, 214, § 60, 2d ed.; The People v. Brown, 23 Wend., 47.)

V. It was neither alleged in the complaint, nor proved upon the trial, that the recognizance had ever been filed or became matter of record in the court. (See The People v. VanEps, 4 Wend., 387.)

*Henry Sacia,* for the People.

I. The recognizance having been duly filed, became a record of the court, *ipso facto*, and no further averment was necessary in this respect to sustain the action. (3 Cow., 340; 10 Wend., 464; 5 Sanf., 54.)

II. The accused having been apprehended in Montgomery county, the offence was triable there according to statute, and the recognizance properly belonged in that county. (2 R. S., 1st ed., 688; 2 Leach C. C., 826.)

III. It is submitted that, for the purposes of arrest and examination in criminal cases, a justice of the peace is an officer of the State. (4 Bl. Com., 290; 1 Chit. Cr. Law, 75; Barb. Cr. Law, 485.) 1. He is clearly confined to the territorial limits of his county, as far as his *personal action* is concerned, but *he may inquire therein*, whether an offence has been committed against the state. (9 Wend., 322; 2 Hale, 50, 51.) 2. His warrant is properly issued in behalf of the people of the State, and it can be so issued even where the offence is against the United States. (5 Cow., 273; 19 J. R., 279.)

IV. He is expressly *authorized by statute* to issue a warrant "whenever it shall appear that any *criminal offence has been committed,*" without regard to the place of its commission. (2 *R. S.*, 706, § 3.) 1. The first section of this chapter speaks of justices merely as *town* officers, "elected in any town," yet confers the power mentioned, which in this respect is co-ordinate with that of the "chancellor," &c., in like cases. (*Id.*, § 1.) 2. The very next title in relation to summary *trials* before these magistrates, cautiously gives *that jurisdiction* only, in cases "arising within the irrespective counties." (*Id.*, 711, § 1; 2 *Cow.*, 815; 16 *Wend.*, 297.)

V. It is believed that the magistrate in this case pursued the statute, and acted in accordance with the common law, which justified the arrest and legalizes the recognizance. 1. The *dictum* of Judge Bronson in *The People* v. *Cassells*, is not based on argument or authority; the case was disposed of on the ground that the district attorney had no notice of the proceeding, and it is respectfully urged that there is no precedent for it, and that it is contrary to the policy of our laws.

*By the Court,* ROSEKRANS, J. The statute requires that whenever a prisoner shall be let to bail by an officer out of court, the officer shall immediately cause the recognizance taken by him to be filed with the clerk of the county in which the party bailed was imprisoned. (2 *R. S.*, 4*th ed.*, 893, § 34.) The recognizance is to be certified by the magistrate taking the same, to the court at which the defendant is bound to appear. (*Ib.*, § 28.) The court can take no action upon the recognizance until it is filed; and for that reason, power is conferred upon the court to compel the return of the recognizance in case the magistrate who took it omits to certify and file it as the statute requires. And, in an action upon a recognizance, it is necessary that it should appear that the recognizance was filed in or made a record of the court in which it is returnable. (*People* v. *Huggins*, 10 *Wend.*, 472, 464; *People* v. *Van Eps*, 4 *Wend.*, 393, *and cases there cited.*) In the case of *People* v. *Huggins, supra,* although the declaration did not positively aver the fact that

The People *v.* Shaver.

the recognizance was filed in or made a record of the court, yet, as *it referred to the recognizance as a record of the court,* it was *held,* upon general demurrer, that the pleading was good. In this case the complaint does not contain any averment of or allusion to the fact, that the recognizance upon which the action is founded, was ever filed or made a record of the court, and, within the authorities, the nonsuit was proper upon that ground. The complaint did not state facts sufficient to constitute a cause of action. Without the filing of the recognizance, the order that it be forfeited and prosecuted was a nullity. The court had no power to make such order. Had the plaintiff furnished proof, upon the trial, of the filing of the recognizance, the complaint might have been amended; but no such proof was offered.

The recognizance, too, appeared to have been taken under illegal duress of the prisoner, for whom the defendant became bail. The complaint averred, and the proof showed, that upon an unindorsed warrant issued by a justice of the peace of Fulton county, a constable of Montgomery county arrested the defendant named in the warrant, in the latter county, and took him before the justice who issued the warrant in Fulton county. While under this arrest, the recognizance was entered into. Assuming that the warrant was legally issued, it could only have been directed to an officer of the county in which the justice of the peace who issued it was a magistrate, and such officer could only have executed the warrant in that county, unless the defendant had escaped to or was in another county, " *out of the jurisdiction of the magistrate who issued the warrant,*" and then only upon proof of the handwriting of the magistrate who issued it being furnished to an officer in the latter county, and obtaining his indorsement of the warrant; and such indorsement would authorize the officer bringing the warrant, or any other officer to whom it may have been directed, to execute the warrant in the county where it was indorsed. (2 *R. S.,* 4*th ed.,* 890, § 3, 45.) Such indorsement would extend the jurisdiction of the officers of the county in which the magistrate who issued the warrant resided, to the county in

which the warrant was indorsed, but it would not confer any power upon an officer of the latter county to arrest the defendant any where, not even in his own county, nor to take the defendant out of his county before any magistrate in the county in which the warrant was issued. The privilege of avoiding a contract on the ground of duress, is generally personal to the party under duress, and the general rule is, that no other person can take advantage of it. An exception, however, is made in favor of a surety. (*Fisher* v. *Shattuck*, 17 *Pick· R.*, 152.) In *Theobald on Principal and Surety* (1 *Law Lib.*, 2), it is said that "the obligation of the surety being *accessory·* to that of the principal, it is of its essence that there should be a valid obligation of a *principal debtor*. The nullity of the principal obligation necessarily induces the nullity of the accessory. Without a principal there "cannot be an accessory." And at page 207 (Marg.), it is said, "the office of bail, it is evident, is founded on the privilege given by the law to the plaintiff, of arresting and imprisoning, and keeping in prison the defendant; and, therefore, if the plaintiff in any case, either had not the right to arrest, or by his own act or the act of the law, has lost the right to keep the defendant, the derivative right of the bail ceases; and their right of keeping the defendant being gone, they are discharged from the obligation of keeping him. In *McClintock* v. *Cummins* (3 *McLean R.*, 158), it was held that a father and son may each avoid his obligation by duress of the other, and also a husband by duress of his wife.

Besides, the recognizance was void, under the circumstances, as to both principal and surety, on the ground that it was taken before a magistrate of the county of Fulton, by whom the warrant of arrest was issued for the appearance of the principal at the Court of Sessions in the county of Montgomery. The justice of the peace derived all his authority to take the recognizance, from the statute; and unless the provisions of the statute are complied with, the recognizance is a nullity. A party may be indicted for a second, third or other marriage, prohibited by statute, in the county in which he may be appre-

hended, and the same proceedings had upon such indictment as if the offence had been committed there. (2 *R. S.*, *4th ed.*, 870, § 10.) But this provision refers to a lawful arrest. Conceding that the arrest in Fulton county was legal, the recognizance should have been made returnable at the next criminal court in that county having cognizance of the offence. (2 *R. S.*, 892, § 21.) The statute makes no provision for the taking of a recognizance by a magistrate upon a warrant issued before indictment for the appearance of a party at a court in any other county than that in which the magistrate taking it is an officer, except where a warrant has been issued for an offence not punishable with death or imprisonment in a state prison, committed in the county of the magistrate who issued the warrant, and the defendant has escaped to, or is arrested in, another county, and is brought before a magistrate of the latter county, upon a warrant indorsed by a magistrate of such latter county. In such case, the magistrate before whom the defendant is brought, may take a recognizance for the appearance of the defendant at a court to be held in the county of the magistrate who issued the warrant. (2 *R. S.*, 890, §§ 8, 9, 10, 11.)

If the warrant under which the recognizance in this case was taken, had been properly issued by a justice of the peace in Fulton county, and had been indorsed by a justice of the peace in Montgomery county, and the defendant arrested in Montgomery county by a constable of the county of Fulton, the offence charged in the warrant being punishable with imprisonment in a state prison, the defendant must necessarily have been taken to Fulton county before some magistrate of that county. The arrest of the defendant in Montgomery county, under the Fulton county process, by a Fulton county officer, would be deemed in law an arrest in Fulton county for all the purposes of examination of the defendant, the taking of bail, and trial for the offence charged. The justice in Fulton county could not, however, take a recognizance under that proceeding for the appearance of the defendant in a court in any other county than Fulton. The statute relating to indictments

for bigamy in the county where the defendant may be appre-
hended, was not intended to authorize the taking of such a
recognizance as that counted upon in this case.

The nonsuit was rightly ordered, and the judgment entered
upon it should be affirmed.

Supreme Court. Cayuga General Term, June, 1858. *Welles, E.*
*Darwin Smith* and *Johnson,* Justices.