[Filed December 14, 1888.]

## GEORGE W. BELT, DISTRICT ATTORNEY, RESPONDENT, *v.* W. W. SPAULDING AND CLEVELAND ROCKWELL, APPELLANTS.

CRIMINAL LAW — UNDERTAKING OF BAIL — DESCRIPTION OF OFFENSE CHARGED. — An undertaking of bail taken before a magistrate upon a criminal examination must state briefly the nature of the crime charged, or it will be invalid.

BAIL — UNDERTAKING — DESCRIPTION OF THE OFFENSE CHARGED. — An undertaking which describes the offense which the defendant must appear and answer as abortion fails to describe any offense defined or made punishable by the law of this state.

BRIEF STATEMENT OF CRIME CHARGED — WHAT SUFFICIENT. — If the crime charged be one that has a technical name, as arson, murder, burglary, rape, larceny, and the like, it will be sufficient to indicate the charge by such general name; if not, enough must be stated in the undertaking to describe briefly some crime made punishable by the laws of this state.

UNDERTAKING MUST BE FILED WITH CLERK OF THE COURT WHERE DEFENDANT REQUIRED TO APPEAR. — Section 1476, Hill's Code, makes it the duty of the magistrate taking bail to file the same with the proper clerk forthwith upon the close of the examination.

FAILURE TO FILE UNDERTAKING — EFFECT OF. — Until such undertaking be filed with the clerk of the proper court, no judgment of forfeiture can be given or rendered by such court.

APPEAL from Multnomah County.

*H. H. Hewitt, District Attorney,* and *R. & E. B. Williams,* for Respondent.

*Moreland & Masters* and *George H. Burnett,* for Appellants.

STRAHAN, J.—This action is brought by George W. Belt, district attorney of the third judicial district, to recover two thousand dollars, alleged to be due from the defendants as bail for one G. H. Davis.

It appears from the court's findings that on the eighteenth day of June, 1887, one William Yergen charged one Dr. Davis, in effect, with the crime of manslaughter by assaulting one Lizzie Yergen, in Marion County, Oregon, on the seventh day of June, 1887, who was then pregnant with a quick child, and by the use of instruments destroying said child, the same not being necessary to preserve the life of said Lizzie Yergen, the mother of said child. Upon this information, said justice issued a warrant, and G. H. Davis was arrested and brought before him, and waived an examination of said charge, and submitted to the order of said court in said matter, whereupon said justice made an order that said Davis be held to answer the charge of manslaughter by abortion, and that he be admitted to bail in the sum of two thousand dollars for his appearance at the October term, 1887, of the circuit court of Marion County, and thereupon said Davis deposited with said justice in lieu of bail the sum of two thousand dollars, and was discharged from custody on the fifth day of July, 1887. Afterwards, on the twenty-third day of September, 1887, the undertaking sued on was attempted to be substituted in place and lieu of said two thousand dollars. The undertaking is as follows:—

"Justice's Court for the precinct of East Salem.

"State of Oregon,   } ss.
    County of Marion.}

"An order having been made on the third day of July, 1887, by J. O'Donald, justice of the peace in and for East Salem precinct, in Marion County, Oregon, that G. H. Davis be held to answer upon a charge of abortion, upon which he has been duly admitted to bail in the sum of

two thousand dollars, we, W. W. Spaulding, of Portland, Oregon, by occupation a wholesale meat dealer, and Cleveland Rockwell, of Portland, Oregon, by occupation a capitalist, hereby undertake that the above-named G. H. Davis shall appear and answer the charge above mentioned in whatever court it may be prosecuted, and shall at all times render himself amenable to the orders and precepts of the court, and if convicted, shall appear for judgment, and render himself in the execution thereof, or if he fail to perform either of those conditions, that we will pay to the state of Oregon the sum of two thousand dollars.

" Dated this twenty-second day of September, 1887.

    (Signed) .             " W. W. SPAULDING,

                          " CLEVELAND ROCKWELL.

" Taken and acknowledged before me the day and year above written.

                        " Justice of the Peace."

Then follow the affidavits of Spaulding and Rockwell, showing that they possessed the requisite qualifications to become sureties, and that each of them was worth over two thousand dollars, exclusive of property exempt from execution, and over and above all just debts and liabilities. There is no mark on the undertaking to indicate that it was at any time filed with the county clerk. At the October term, 1887, of the circuit court of the state, for Marion County, the grand jury returned an indictment, indorsed "a true bill," charging G. H. Davis with the crime of manslaughter, by producing abortion. The indictment sets out with the necessary particularity the same offense charged in the information filed with Justice O'Donald.

It also appears from the findings in the case that at the October term, 1887, of said circuit court, said G. H. Davis was duly called to answer said indictment, but failed and neglected to appear in said court for arraignment, or for

any purpose whatsoever, and that the present defendants, sureties for said Davis, failed to produce said Davis in court, or to furnish any excuse for Davis's absence or his failure to appear.  Said court thereupon directed that the fact of said failure of said Davis to appear to answer said indictment be entered in the journal, and said undertaking be deemed forfeited.  The venue was changed to Multnomah County, where the cause was tried by the court, without the intervention of a jury, which trial resulted in a finding and judgment for the plaintiff for the sum of two thousand dollars, and for costs and disbursements, from which judgment the defendants have appealed to this court.

The notice of appeal contains numerous assignments of error.  Such of them only will be noticed as are necessary to the determination of the case.

1.  It is claimed by the appellants that the undertaking sued on does not describe any crime known to the laws of this state, and that it is therefore invalid and insufficient. This objection suggests two questions: 1. Whether an undertaking in a criminal proceeding which fails to describe an offense punishable by the laws of this state is for that reason invalid; and 2. Whether the undertaking in question describes such offense.  These questions will be considered in the order stated.

1.  In an early case in this state ( *Williams* v. *Shelby*, 2 Or. 145), this court laid down what I conceive to be the true rule applicable to this class of undertakings.  It is there said: "The circuit court held that although there was no statute then in existence authorizing the taking of this bond by the justice, yet it might be sustained and held valid as a common-law undertaking; that the discharge of the principal for the time being was a sufficient consideration to sustain the promise and agreement entered into.  This holding, we think, cannot be sustained

by the authorities; in fact, none have been produced to that effect. Authority has been cited to this effect, that another class of bonds might well be sustained from their form and structure, without the aid of statute, such as injunction bonds, replevin bonds, bail bonds in civil cases, forthcoming bonds, appeal bonds, and all such as are made payable to the beneficiary or interested party. Such have been held valid at common law, without resorting to the statute to give them effect; but it is held otherwise in criminal cases."

There is no other rule by which the question under consideration can be solved, except by reference to the adjudged cases; but before proceeding to an examination of the cases, it may be proper to refer to section 1470, Hill's Code, which prescribes the form of the undertaking to be given in criminal prosecutions before indictment, and requires that the *nature of the crime charged* be briefly stated in such undertaking.

This action evidently requires that there should be a crime charged, and that its *nature* — the sum of qualities and attributes which make a thing what it is, as distinct from others, or the kind, sort, character, or species — be briefly stated in the undertaking. This statutory requirement, then, it is believed, introduced no new rule, but left the law just as it was before its enactment. In other words, it is declaratory of the common law on that subject.

A brief reference to the authorities will better illustrate the rule. In *People* v. *Sloper*, 1 Idaho, 158, it is thus stated: "The undertaking need not set out the offense charged with the same technical particularity required in an indictment, but it will be sufficient if the offense be substantially described, that it may appear what charge the accused is held to answer. If, however, the recognizance undertake to recite a specific charge, as in

the present case, a charge must be recited for which an indictment will lie, otherwise the recognizance will be void."

So in *Nicholson* v. *Georgia*, 2 Ga. 363, it was held that a recognizance must stand or fall by itself, and if not good on its face by failing to specify the offense for which the accused was arrested, and bound to appear and answer, parol evidence is inadmissible to supply the defect.

So, also, in *Dailey* v. *State*, 4 Tex. 417, the offense with which the defendant stood charged, according to the undertaking, was, "having in his possession stolen goods," and the court said: "We know of no law making this an indictable offense, or which authorizes the taking of a recognizance to answer this charge. The mere fact of having in his possession stolen goods is not a crime. The possession may be lawful, and would not be criminal unless accompanied with a criminal *scienter*, or felonious intent." The possession of stolen goods may be evidence to support a charge of larceny, but it does not of itself constitute that crime."

So in *Cotton* v. *State*, 7 Tex. 548, the court says: "To answer a charge of felony would be sufficiently explicit, because for every felony an indictment will lie. But an indictment will lie on every charge of 'gaming.' The same may be said of a charge of 'playing at a game of cards.' The words do not describe an indictable offense. There must be something more than simply 'playing a game of cards' to subject the party to a criminal prosecution. It does not therefore appear that the principal in the recognizance was bound to answer to an offense for which a criminal prosecution could be maintained. The recognizance consequently was not obligatory upon him or his sureties, and no valid judgment upon it could be rendered."

To the like effect is *Tousey* v. *State*, 8 Tex. 174; *Commonwealth* v. *West*, 1 Dana, 165; *West* v. *Commonwealth*, 3 J. J. Marsh. 641; *Simpson* v. *Commonwealth*, 1 Dana, 523; *State* v. *Ridgley*, 10 La. Ann. 302; *State* v. *Forno*, 14 La. Ann. 450; *Gray* v. *State*, 43 Ala. 41; *People* v. *Kane*, 4 Denio, 530; *People* v. *Rundle*, 2 Hill, 506; *State* v. *Gibson*, 23 La. Ann. 698; *Commonwealth* v. *Downey*, 9 Mass. 520; *Commonwealth* v. *Loveridge*, 11 Mass. 336; *Commonwealth* v. *Diggett*, 16 Mass. 446; *Goodwin* v. *Governor*, 1 Stew. & P. 465.

The researches of the learned district attorney has brought to our attention numerous cases which have some degree of relevancy to the question under consideration, but a careful examination of them fails to convince me that, uninfluenced by the peculiar circumstances or condition of the particular case, they declare any other or different rule from the one announced by the authorities already cited.

The rule commended by these authorities is reasonable. It imposes no inconvenience upon the public, and is at once notice to the bail of the gravity and importance of their undertaking. The undertaking, I think, must on its face indicate briefly the nature of the offense charged, and unless it does so, it is not binding.

I do not mean by this that it should be stated with the technical particularity necessary in an indictment. Far from it. If the crime charged be one that has a technical name, as murder, arson, burglary, rape, larceny, and the like, it will be sufficient to indicate the charge by such general name; if not, enough must be stated *in the undertaking* to point out clearly and unmistakably that a particular crime known to the law of this state is charged.

2. Does the undertaking in question do this? Crimes at common law are unknown in this state. No act is punishable here unless it be made so by some statute,

and it must be conceded that we have no statute declaring "abortion" to be a crime or making it punishable. The offense for which G. H. Davis was prosecuted is defined by section 1721 of Hill's Code. That section is as follows:—

"If any person shall administer to any woman pregnant with a child, any medicine, drug, or substance whatever, or shall use or employ any instruments or other means, with intent thereby to destroy such child, unless the same shall be necessary to preserve the life of such mother, such person shall, in case the death of such child or mother be thereby produced, be deemed guilty of manslaughter."

It will be observed the word "abortion" does not occur in the section, and there is no statute defining or punishing it is a crime. The term itself does not import a crime. It simply means, according to Webster, the act of miscarrying, the expulsion of an immature product of conception, miscarriage; the immature product of an untimely birth. And an eminent law writer defines it to be the act of bringing forth what is yet imperfect; and particularly the delivery or expulsion of the human *fœtus* prematurely, or before it is yet capable of sustaining life; also the thing prematurely brought forth, or produced of an untimely process. (1 Abbott's Law Dic. 3, title Abortion.) In *Abrams* v. *Foster*, 3 Iowa, 274, the question whether a charge of abortion imputed a crime underwent a very thorough and learned examination. It was an action for slander for words spoken by the defendant's wife, whereby the plaintiff was charged with causing or procuring an abortion, and the question was, whether the charge imputed a crime, and the words spoken actionable *per se*. The court, after a very careful and exhaustive examination of the authorities, held that the charge did not impute a crime, and that the words were not actionable.

3. Another objection urged by the appellants upon the trial was, that the undertaking was invalid, and the adjudged forfeiture was ineffectual, for the reason that the undertaking had not been returned to the circuit court.

Section 1476, Hill's Code, requires the court or magistrate, when the examination is closed, to indorse on the undertaking an order, either allowing or disallowing the bail, and must forthwith cause the same, with the affidavits and examination of sureties, and the order of admission to bail, to be filed with the clerk of the court at which the defendant is bound to appear, or where the action is pending, or the judgment appealed from is given, as the case may be.

A statute similar to the one just referred to was in force in the state of Iowa; and in a somewhat analogous case which arose under it, the supreme court of that state said: "The cases cited by counsel of appellant sustain the position that such bond should be on file before such forfeiture could be declared, and particularly the case of *Bacon* v. *People,* 14 Ill. 312.

Although this was a proceeding by *scire facias*, we think the principle is equally applicable in actions of debt on the bond. Says Treat, C. J.: "It does not appear that the recognizance was returned to the circuit court before the judgment of forfeiture was pronounced. The statute requires every recognizance taken out of court to be certified and returned into the circuit court. It is not a matter of record until this is done. It must become such before a forfeiture can be entered, or a *scire facias* can be issued upon it. The court may compel the officer by attachment to return it, but it must become a record of the court before a forfeiture can be declared." (*State* v. *Klingman,* 14 Iowa, 404.)

And to the same effect are the following: *Bridge* v. *Ford,* 7 Mass. 210; *Libbey* v. *Main,* 7 Me. 344; *Darling* v. *Hub-*

*bell,* 9 Conn. 627; *State* v. *Smith,* 8 La. Ann. 471; *Elliott* v. *Dudley,* 8 Mich. 62; *People* v. *Shaver,* 4 Park. Cr. 45; *Tarbel* v. *Gray,* 4 Gray, 444; *County of Mendocino* v. *Lamar,* 30 Cal. 627; *State* v. *Smith,* 2 Me. 62.

A copy of the undertaking is attached to the complaint, but there are no file-marks on it indicating its filing in the circuit court. If it had been actually filed in the circuit, the neglect of the clerk to place his file-mark on it would not prejudice the state.

The fact of filing might be alleged and proven. (*State* v. *Klingman, supra.*) But this was not done, nor is there any allegation or finding that said undertaking was ever returned to the circuit court. Plainly the circuit court could not declare a forfeiture of the undertaking until it had been returned to and had become a record of that court. In the absence of such undertaking, it could have no jurisdiction to declare a forfeiture.

4. Several other questions were discussed upon the trial, but it is unnecessary to pursue the inquiry. What has been said is enough to show that the judgment rendered cannot be sustained. This conclusion has been reached with reluctance. There is nothing in the attitude of the defendants to induce the court to favor their defense, aside from the strict letter of the law. They appear to be volunteers to aid a person who stands indicted for a most outrageous crime, and a little attention to the requirements of the law on the part of the officers would have fixed the liability of such defendants so that it could not be questioned. But the court cannot, by distorting the law or forcing it beyond its plain import, supply such defects and omissions.

LORD, J., concurs in the result. Let the judgment be reversed.