[No. 1849]

## STATE OF NEVADA, Appellant, *v.* DANIEL O'KEEFE, SAM OATS and J. H. GRANT, Respondents.

1. Bail—Criminal Prosecutions—Recognizance—Description of Offense—Sufficiency.

   In recognizance the details of the offense need not be stated with the particularity required by the indictment, but it suffices if any word is used by way of recital which is commonly employed to designate the particular offense.

2. Bail—Criminal Prosecutions—Recognizance—Description of Offense—Sufficiency.

   The criminal practice act, section 511 (Comp. Laws, 4476), provides that the recognizance shall be substantially in the form there given, and in a space contemplated for the name of the crime are the words, in parentheses, "designating it generally." The civil practice act, section 71 (Comp. Laws, 3166), provides that the court shall disregard any error or defect in the proceedings which shall not affect the substantial rights of the parties. *Held*, that a recognizance reciting that "an indictment having been found charging W. with the crime of uttering and passing false paper," etc., sufficiently designated the crime without stating that the false paper was passed with intent to defraud.

Appeal from the District Court of the Seventh Judicial District of the State of Nevada, Esmeralda County; *Theron Stevens*, Judge.

Action by the State of Nevada against Daniel O'Keefe and others.    From the judgment, plaintiff appeals.    **Reversed with directions.**

The facts sufficiently appear in the opinion.

*Augustus Tilden* and *George Springmeyer*, for Appellant:

I.    "Killing," like "stealing" and "theft," is a layman's term, and all "killings" are not crimes, but the court, despite the statutory provision that the bond "shall name the nature of the offense charged," construed the allegation to mean a felonious killing and held the description sufficient.    "Breaking in

an outhouse and stealing therefrom." (*Main v. Comm.*, 56 S. W.
970.) The statute in Kentucky described the offense as "the
felonious breaking any outhouse belonging to or used with a
dwelling-house." Said the court: "The bond is good because
the description indicates in a general way the nature of the
charge, which is all that is required." This is particularly
important because a felonious intent is an essential ingredient
of the offense. (*State v. Reiman*, 3 Pennewill, 73.) "With the
offense of V. L. O. L." (*Allen v. Commonwealth*, 73 S. W. 1027.)
The Kentucky statute requires that the "undertaking of bail
shall describe the offense." The court held the above descrip-
tion good on a prosecution for the violation of the local option
law, saying that the abbreviation did not invalidate because
"the sureties knew defendant was indicted and they were pledg-
ing themselves that he would appear, even though they did
not understand the offense." "Obtaining money by false pre-
tenses." (*Terr v. Connor*, 87 Pac. 591.) In this crime the guilty
knowledge and the felonious intent are essential ingredients.
But it must be admitted that the descriptive words are the
general words naming the offense. Not naming the offense
at all; *i. e.*, an entire omission of any description. (*People v.
Gillman*, 26 N. E. 469.)

II.   When it is remembered that our code was adopted
from that of New York and that the New York court was
construing a form of bond which throughout is in the lan-
guage of the Nevada form, even the words "shall at all times
render himself amenable to the order and process of the
court," the decision is rendered most striking and important.
It is believed that it conclusively determines the principal
case adversely to respondents.   To follow what is so well
demonstrated by the New York court, in our case the sub-
stantial rights of W. J. Wheaton, the person admitted to bail,
are in no wise prejudiced, and unless they are so prejudiced
by a technical error in the undertaking, because of the general
policy shown by the statute (Comp. Laws, 4452), the sureties
will not be released; and, further, even though the description
be defective, that is not the essence of the undertaking, for
the sureties contract for more, viz: that the indicted person

"shall at all times render himself amenable to the order and process of the court," and this the respondents as sureties have failed to do.

III.   But one other attack which would be entitled to any consideration could be made upon the description, "the crime of uttering and passing false paper." It is that the words "false paper" are not used in section 83½ of the crimes and punishments laws, but instead are used "bill, note, check or other instrument in writing." "False paper," in common parlance, applies to all of them, and although the crime has not been long known to the law, the universal description applied to it is "the crime of uttering and passing false paper," just as "murder" is the common term for the crime. In *State* v. *Murphy*, 23 Nev. 390, our supreme court held that "selling whisky to an Indian" was a sufficient description in a bond, for although the statute does not use the word "whisky" but only the words "spirituous, or malt liquor, wine or cider of any description," the courts judicially know that whisky is a spirituous liquor. Said the court: "It is well settled that courts will take judicial notice of the meaning of words, which from continuous use have acquired a definite signification generally, if not universally, known." This effectually disposes of any point that may be made along this line. Finally, the court, in passing upon the liability of the respondents upon the bail bond in question, might with advantage keep in mind the following additional facts and principles:

(1) In every respect—saving the controversy as to the description of the crime—the Nevada statute as to the requisites of bail bonds is followed precisely and word for word. And the indictment by the complaint appears to be good.

(2) The courts generally hold that trivial defects or technicalities in the form of bonds should be disregarded, since the sureties are being sued civilly. "A bond is sufficient where the sureties know what they undertake." (*City of Kansas* v. *Hescher*, 4 Kan. App. 782, 46 Pac. 1005; *City of Kansas* v. *Garnier*, 46 Pac. 707; 5 Cyc. 103, and citations.) Texas is the only state holding *contra*.

(3) The general policy of the law is to hold the sureties wherever possible. Section 1895 of Cutting's Compiled Laws expressly makes that provision as to official bonds.

(4) "Passing false paper" is the general method of describing the offense, just as "murder" or "arson" or "obtaining money by false pretenses" are the usual terms applied to those crimes.

(5) Public policy warrants the upholding of the bond signed by respondent, for, if it be so defective as to release the sureties, it would be seldom indeed that a justice court bond would stand. Justices of the peace are rarely learned in the law, and to require a technical description of an offense would lead to hardship upon the public and its officers, to the abuse known as "jumping" bonds, and to the resultant increase in the commission of crime.

(6) The statutory requirement, "describing it generally," is not mandatory, and universally it is held that closely related phrases do not mean the technical precision required in an indictment. (5 Cyc. 98; 5 Cent. Dig. col. 2371.)

*Frederick W. Hankey*, for Respondents:

I. Curiously in the act of 1907 the legislature state that persons violating said provision shall be deemed guilty of a "felony." If the legislature, by the act of 1907, created a new crime, that crime could only be determined as follows, that is, any person who would pass, utter or publish, with the intent to defraud, an instrument in writing, for the payment of money, of the delivery of property, directed to or drawn upon some real or fictitious person, bank, firm or corporation, when such person had no money, property or credit, or insufficient money, property or credit, to meet or make payment of the same. If a person did all of those things and had no intention to defraud, it would not be a crime. Any person might pass, utter or publish a check for the payment of money, directed to and drawn upon a bank when such person had no money in the bank, and do so innocently. The contention of respondents was and is that there is no such offense against the criminal law of the State of Nevada as the "crime of uttering and passing false paper." There is a crime and offense against the laws of the State of Nevada covered by the act of 1907,

page 207, of the passing, uttering or publishing a bill, note, check or instrument, with the intent and under the circumstances defined in that statute. The recognizance in this case did not define that offense, nor did it give any general characterization or designation of a crime known to the laws of the state, and therefore did not comply with section 4476 as to the form therein given, either *in hæc verbis* or substantially.

II.    If in the case at bar there was any general designation of the alleged offense stated, it would have been "forgery," and that was not used, and the designation omitted to state any but one of the essential elements of the offense described in the act of 1907.

III.    It will be contended that "uttering and passing false paper" is not an offense at common law, nor that there is any general name by which it can be designated, unless it be "forgery," as provided by the law of 1861. It is here and now expressly admitted by counsel for respondent that if a recognizance or bail bond "generally designates" an offense as "murder," "rape," "larceny," "forgery," "riot," "assault," or any other general term importing crime, it would be sufficient, but upon this question it is finally submitted that this recognizance fails in every particular, and by reason thereof did not create an obligation against the respondents, and the demurrer was properly sustained. Adverting to counsel for appellant's persistent appeal to this court to proceed upon the principles of "abstract justice" and to disregard the plain provision of the statute, without a compliance with which the respondents could not be held liable, we respectfully beg leave to recall this court's attention to this expression as given in *Sherman* v. *Shaw*, 9 Nev. 152, in which the court said: "It is as unsatisfactory to the court as it is to counsel to have cases disposed of upon mere questions of practice. But it must be remembered that the rules of practice are as obligatory upon us as upon the parties to the suit; and if the attorneys desire to have their cases examined upon the merits they must comply with the plain provisions of the statute, and the rules as established by the court." This expression has been approved in *Marx* v. *Lewis*, 24 Nev. 306, and in a criminal case where this court felt extreme reluctance (*State* v. *Preston*, 30 Nev. 301.)

*Augustus Tilden*, District Attorney, and *George Springmeyer*, for Appellant, in reply:

I. A further consideration is, that this, being a suit to enforce a contract, under our practice it is purely a civil suit, a proceeding to recover on the forfeiture of a bond, and does not, therefore, in any respect, have to do, in a criminal way, with any of the rights of the person accused of crime. Even under the common-law writ known as a *scire facias* to enforce a forfeited recognizance, it is held to be a wholly civil proceeding. "The action to enforce, whether by *scire facias* or by ordinary suit, does not involve the guilt or innocence, conviction or acquittal of any party, and therefore is not a criminal case of any grade. * * * Nor do we think that such action can be considered in any reasonable sense a criminal proceeding, although it may be a proceeding arising in a criminal case." (*U. S.* v. *Zarafonitis*, 150 Fed. 97.) And see *Kirk* v. *U. S.*, 124 Fed. 333, for a full discussion. Practically every state holds such a proceeding to be civil. (19 Ency. Pl. & Pr. 307.)

II. A full description of the offense would make the bond a very cumbersome document. It is, of course, clear that a person, not having sufficient funds with the drawee, might innocently draw and pass a check, for example. And an indictment that failed to allege the criminal intent would be defective. It is believed that sufficient particularity for a bond is had by the use of the word "crime," and the rest of the bond sufficiently imputes the criminal intent. The words, "with the intent to defraud," do not enlighten the sureties, even if they are entitled to know and are not presumed to know the charge. We have no quarrel with *Waters* v. *People*, 35 Pac. 56, cited by respondents. It clearly comes within the category of cases where a bond is given for an offense which is not punishable in law, *i. e.*, is not a crime at all. Here there is no suggestion that W. J. Wheaton was not charged with a crime. Although they were not commented upon by counsel for respondents, it is earnestly urged that in reaching a conclusion upon the question of whether the offense is properly described, the cases cited in appellant's opening brief are of emphatic significance, and should not be disregarded. And

again, we call the attention of the court to some valid descriptions, almost parallel to our case: "Resisting process." (*Browder* v. *State*, 9 Ala. 58.) "With the offense of V. L. O. L." (*Allen* v. *Comm.*, 73 S. W. 1027.) Not naming the offense at all, *i. e.*, an entire omission of any description. (*People* v. *Gillman*, 26 N. E. 469.)

III.   Attention is called to the fact that these provisions do not go merely to the pleadings, but to the proceedings; the decision is to be based on abstract justice. This court has on numerous occasions applied these provisions and disregarded technicalities. (*Hawthorne* v. *Smith*, 3 Nev. 182; *McManus* v. *Ophir Co.*, 4 Nev. 15; *Flagg* v. *Trustees*, 4 Nev. 400; *State* v. *C. P. Co.*, 7 Nev. 103.) In *McManus* v. *Ophir Co., supra*, this court quotes from Van Santvoord as follows: "This furnishes a single test in all cases, a broad and universal test, namely: That if the defect is such as in the opinion of the court will not affect the substantial rights of the adverse party, no matter in what that defect shall consist, the judgment will not be reversed or affected thereby * * *; the action is to be stated, tried and determined on its merits alone, and that the substantial rights of the parties, and they alone, are to be regarded as controlling the administration of justice under the form of law." Appellant vigorously asserts that, taking this to be a civil proceeding, holding good the description of the offense will not affect the substantial rights of the respondents; and, on the other hand, if it is in the nature of a criminal proceeding, such a holding will not affect any substantial rights of W. J. Wheaton, the defendant accused of crime. Whatever view is taken, the conclusion is the same. Apropos the Texas case, it is interesting that the Texas legislature, presumably because of the interpretation given to the statute, has twice amended the provision upon recognizance. In commenting upon the Texas cases the Supreme Court of New Mexico in *Terr* v. *Minter, supra*, a case decided in 1907, said: "It is true that there were some cases which seemed to hold that the offense must be described with particularity, and the elements of the crime set out, notably the Texas cases cited by appellant. But the latter cases are founded upon a statute which provides that the offense of which the defendant is

VOL. XXXII—22

accused be definitely named in the bond, and that it appear therefrom that he is accused of some offense against the laws of the state."

By the Court, TALBOT, J.:

This action was brought to recover on a recognizance, given under section 511 of the criminal practice act (Comp. Laws, 4476), by which one W. J. Wheaton, who had been indicted, obtained his release and failed to appear for trial. General demurrers to the complaint were sustained, and the state has appealed from a judgment rendered in favor of the respondents for costs. The only question presented is whether the recital "an indictment having been found * * * charging W. J. Wheaton with the crime of uttering and passing false paper" is such a defective reference to the crime as to invalidate the recognizance and prevent it from being enforced. The statute states that the recognizance should be substantially in the form there given; and in a space contemplated for the name of the crime are the words, in parentheses, "designating it generally."

The authorities are not uniform. It is claimed that it was necessary to state in the recognizance that the false paper was passed with intent to defraud, for without such intent there would be no guilt. This would be true if we were considering the necessary allegations of an indictment, but the cases very generally hold that the details of the offense need not be stated with the particularity required by indictment. In *State* v. *Birchim*, 9 Nev. 99, this court said: "The rules governing the construction of commitments and recognizances are essentially different. The common law has always protected the subject against arbitrary imprisonment by requiring the causes of his detention to be expressed upon the commitment. * * * A recognizance, however, is the voluntary act of the obligors, and assumes the existence of a valid commitment. The reasons for setting forth the particulars of the offense in commitments do not exist in the case of recognizances, and the construction given in the words 'nature of the offense,' as they occur in section 166 (Comp. Laws, 4136), is inapplicable to the same words in section 504. * * * The object of

this section is to provide a form which the magistrate may be required to accept. A failure to follow the form would not release the obligors from their liability. (2 Ld. Raym. 1138, 1459; *Phelps* v. *Parks*, 4 Vt. 488; *State* v. *Cannon*, 34 Iowa, 323.)"

Respondents rely in part upon, and it is said the district court was moved by, the opinions in *Belt* v. *Spaulding*, 17 Or. 130, 20 Pac. 829, *U. S.* v. *Sauer* (D. C.), 73 Fed. 671, and various Texas decisions. This federal case was in that state, and it was held that the form of the bail bond taken by the United States commissioner should conform in all substantial particulars to the requirements of the state in which the commissioner was sitting. The opinion in *Belt* v. *Spaulding* was written more than twenty years ago by one of the justices of the Supreme Court of Oregon, and another justice concurred in the result, apparently leaving the language approved by a single judge. The Supreme Court of Colorado, in an opinion rendered last year in *Marmaduke* v. *People*, 45 Colo. 357, 101 Pac. 337, said: "We are aware of the technical rule adopted in *Belt* v. *Spaulding*, 17 Or. 130, 20 Pac. 827, but are not impressed with the logic of that case and decline to follow it." The criminal code of Texas being more stringent than ours in its provisions "that the offense of which the defendant is accused be distinctly named in the bond and that it appear therefrom that he is accused of some offense against the laws of the state" (article 309, subd. 3), the decisions there are not considered directly applicable under our statute.

Among the cases cited by the appellant which support the more liberal rule are ones in which the terms used by way of recital of the offense were "resisting process" (*Browder* v. *State*, 9 Ala. 58); "stealing from the mail" (*U. S.* v. *Dennis*, Fed. Cas. No. 14,949); "stealing from a store" (*Young* v. *People*, 18 Ill. 566); "carrying concealed weapons" (*Hall* v. *State*, 9 Ala. 827); "offense of misdemeanor" (*Vinson* v. *Northen*, 94 Ga. 698, 19 S. E. 991); "the offense of larceny" (*Foote* v. *Gordan*, 87 Ga. 277, 13 S. E. 512); "a charge of killing one T. W." (*State* v. *Williams*, 17 Ark. 371); and "with the offense of V. L. O. L." (*Allen* v. *Com.*, 73 S. W. 1027). Other cases are presented in which designations similar in principle and omitting to state that the offense had been committed with

felonious intent or guilty knowledge were held not to invalidate the recognizance.

In *People* v. *Gillman*, 125 N. Y. 372, 26 N. E. 469, the court enforced a recognizance which followed the statutory form, but in which there was an omission to fill the blank in the recital intended for the specification of the nature of the crime. There was a provision in New York somewhat similar to section 71 of our practice act (Comp. Laws, 3166), which provides "that the court shall in every stage of the action disregard any error or defect in the proceedings which shall not affect the substantial rights of the parties." It was said that "an error or mistake in the undertaking will not render it invalid unless it have actually prejudiced the defendant or tend to his prejudice in respect to a substantial right. That, obviously, is not the effect here of the omission. As formerly, so now, being the voluntary act of the party, the undertaking permits the presumption of the regularity of the proceedings, and by coming into the proceeding in that manner, in behalf of the accused, the surety will be presumed to know upon what charge the prisoner was held by the sheriff. The statement of the offense charged, therefore, is not of the essence of the undertaking of bail, nor does it bear very materially upon the obligation. It is rather a matter for recital, and it bears upon the completeness of the instrument in form and historical detail." No doubt if the recital of the offense in the recognizance had contained all the details required to be stated in an indictment, the defendants would have signed and executed the instrument. It must be presumed that they were aware of the offense for which Wheaton had been indicted or they would not have sought his release. The real purposes of the recognizance were to obtain his discharge from custody, which they secured, and to guarantee the state the payment of the amount of the bail in case he failed to appear when required by the court.

We think the liberal rule is more strongly supported by the decisions, tends more to serve the ends of justice without doing any real wrong to persons who may sign recognizances, and is more in keeping with our statutory provisions requiring only a substantial compliance with the form for recognizances,

which directs only a general designation of the offense, and the section authorizing disregard of errors which do not prejudice. The recital in the recognizance that an indictment had been found charging Wheaton with the crime of uttering and passing false paper leads to the inference that he had been charged by the grand jury with uttering and passing false paper in such a manner as to constitute a crime, and consequently with intent to defraud. The assertion that he was indicted for crime, without further statement, would be about as definite as the references in some of the recognizances which have been upheld, such as that the accused had been charged with "felony" or "misdemeanor."

We need not determine whether a recognizance would be good which failed to make any reference to the offense such as the one which was enforced in the New York case, but as held in *Marmaduke* v. *People*, 45 Colo. 357, 101 Pac. 337, *supra*, we believe it is sufficient if any word is used by way of recital in the recognizance which is commonly employed to designate the particular criminal offense. The views we have expressed are in harmony with the liberal doctrine in regard to the recital in recognizances heretofore announced in *State* v. *Birchim*, 9 Nev. 99, and *State* v. *Murphy*, 23 Nev. 398.

The judgment is reversed, and the district court is directed to overrule the demurrers to the complaint and allow the defendants to answer if they desire.